## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BETHENNY FRANKEL, on behalf of herself and all others similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | DEMAND FOR JURY TRIAL |
| TIKTOK, INC., | |
| Defendant. | |

Plaintiff, Bethenny Frankel ("Ms. Frankel" or "Plaintiff") individually and on behalf of all other persons similarly situated, by and through her undersigned counsel, brings this class action complaint against TikTok, Inc. ("TikTok" or "Defendant") and alleges, upon personal knowledge of the facts pertaining to her upon the investigation of her counsel, and upon information and belief as to all other matters, as follows:

### INTRODUCTION

1.      This is a civil action for injunctive relief and damages for violation of Ms. Frankel's and Class Members' rights of publicity, New York's Civil Rights Law § 51, common law unfair competition.

2.      Plaintiff Bethenny Frankel is a well-known American businesswoman, television personality, entrepreneur, philanthropist, and five-time best-selling author. Outside of her television work, Ms. Frankel has established herself as a highly successful businesswoman and is the founder of Skinnygirl®, a lifestyle brand, and BStrong, a disaster relief initiative. Through hard work and fame, Ms. Frankel is also known as an influencer; in other words, an individual who through the use of social media marketing endorses certain products for sale and can affect purchase decisions of others because of their credibility, authority, or popularity.

1

3.      For some time, unscrupulous companies and individuals have purloined the images, voices, and content of Ms. Frankel and Class Members to sell counterfeit items through the use of TikTok's platform. Despite demands on TikTok to remove and police this corrupt conduct, TikTok has ignored such demands, and even taken countervailing positions. Aside from not being compensated, the reputation and brand of Ms. Frankel and Class Members are being damaged and tarnished through unauthorized associations with counterfeit goods and other products that they do not support. In one instance when Ms. Frankel posted a video warning consumers of the unauthorized and illegal use of her persona to sell counterfeit goods—with the intent to inform consumers of the deception—TikTok, ironically, removed Ms. Frankel's content as "abusive."

4.      Ms. Frankel never gave permission to the counterfeiters or to TikTok to unlawfully use her persona, voice, content, and/or likeness to market counterfeit products, nor was Ms. Frankel compensated in any manner for the use of her persona, voice, content, and/or likeness. The same is true for putative Class Members who have had their personas, voices, content, and likenesses used to market counterfeit products without permission or compensation.

5.      TikTok has unlawfully allowed the use of Ms. Frankel's persona, voice, content, and likeness and those of putative Class Members, in connection with the promotion of counterfeit goods resulting in irreparable harm to Ms. Frankel and Class Members. TikTok's conduct ignores Ms. Frankel's and Class Members' right of publicity and constitutes unfair competition and deceptive trade practices. Unless TikTok is enjoined, Ms. Frankel and putative Class Members will continue to suffer irreparable and permanent harm.

**PARTIES**

6.      Ms. Frankel is a United States citizen and resides in the state of Connecticut.

7.      On information and belief, Defendant TikTok, Inc., is a duly authorized domestic

business corporation headquartered at 5800 Bristol Parkway, Suite 100, Culver City, California 90230. TikTok is registered to conduct business in the State of New York, maintains an office at 481 8th Avenue, New York, New York 10001, maintains registered agent Ricky Sharma at 237 Flatbush Avenue, Suite 236, Brooklyn, New York 11217, and transacts substantial business in this judicial district.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

9.     The Court also has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1332(d) because this is a proposed class action wherein the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from TikTok. Ms. Frankel is a citizen of Connecticut and therefore diverse from TikTok, which is headquartered in California.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because TikTok operates an office in this District a substantial part of the events or omissions giving rise to Ms. Frankel's claims occurred in this District.

11.      The Southern District of New York has personal jurisdiction over TikTok because it operates an office in this District, conducts substantial business in New York and this District, and the harm suffered by Ms. Frankel flows directly from such business activities conducted by TikTok in this District.

## FACTUAL ALLEGATIONS

### A.  BACKGROUND

12.     TikTok is a major social media platform and was the most downloaded app globally in 2020 with the highest social media engagement rate per post. Used in more than 150 countries, the app has over 1.1 billion users worldwide and is the fastest-growing app globally, surpassing all the influential names like YouTube, Instagram, and Facebook. Indeed, the platform has established a new realm of online sharing that has revolutionized the way people engage with each other and consume digital material. With its remarkable authenticity and expanding cultural influence, this video-based social media app has pushed certain consumers to use and rely upon the platform.

13.     TikTok is a popular video-focused social networking platform that allows users to record, watch, and share short-form video content (ranging from 15 seconds to three minutes) of various genres using their smartphones.

14.     TikTok is a user-friendly and creative application that generates compelling content (lip-syncing, dancing, pranking) by tapping into the imagination of its users through a variety of challenges. The app allows its users to add audio and visual effects, such as music and filters, and is known worldwide for its addictive appeal and high levels of engagement, all thanks to its unique artificial intelligence (AI) system.

15.     TikTok was founded in 2016 by the Chinese company, ByteDance with the mission to "create an endless entertainment platform where anyone can contribute." However, the platform gained significant traction in late 2017, when the company acquired a competitor app, Musical.ly, which transferred its 200 million users to TikTok. And since then, the growth has been exponential. In a short span of four years, TikTok has surpassed 3 billion downloads and reached one-third of all social media users on the planet.

4

16.     TikTok has had such massive success because its parent company ByteDance recognized and embraced that people, particularly Gen Z, are constantly keen to try new things. The platform created the culture of trending videos wherein famous artists frequently design original, themed dances, which other TikTok users subsequently attempt, to the point these dances become very popular and often become dance trends in everyday life. The app has also completely changed how music hits are made and promoted as many currently popular music artists were "discovered" through their TikTok videos.

17.     Additionally, the app caters to a large market of consumers searching for a few minutes of micro-entertainment and diversion during the day.

18.     However, developing a "video-based app" was not altogether a new concept as both Vines and Musical.ly were established and successful video apps with a similar idea. Their success familiarized users with the concept of a video-based app, and their exit from the market served as the foundation for the success of TikTok. In fact, in the first quarter of 2019, TikTok surpassed Facebook as the most downloaded social networking app worldwide.

19.     TikTok has since retained that crown, with 850 million worldwide downloads in 2020 and 656 million worldwide downloads in 2021—more than 100 million downloads than the next most-downloaded application: Meta's (formerly known as Facebook) Instagram. In 2021 TikTok had 94 million downloads in the United States, increasing by 6% over the prior year. TikTok is among the top-10 most-downloaded applications since 2010. In sum, TikTok has over one billion monthly active users with an average eight new users joining *every second* and an average 650,000 new users joining daily.

20.     No wonder, regardless of being a relative newcomer to the social media scene, TikTok is a formidable challenger in terms of user acquisition and engagement. This is because

the platform has capitalized on netizens' shrinking attention spans, particularly among teens, to gain an advantage in making viral.

21.     The platform is a social hub for Gen Z. In fact, 60% of TikTok users are Gen Zers. Thus, TikTok's primary target audience is Gen Z, the "digital natives" who crave attention and social validation. Moreover, the users—the consumers and creators— of TikTok thrive on the platform as it allows them to exhibit their individuality and creativity.

22.     But TikTok is not just limited to Gen Z. In fact, users between the ages 35 and 54 years old grew from 26% in 2020 to 36% in 2021, evidencing the wide reach of TikTok across numerous demographics and age ranges.

23.     Besides its users, TikTok also serves the requirements of its other customer segment: the advertisers. This segment profusely uses the app as the platform provides far more effectiveness than other social media and marketing platforms in cultivating deep audience engagement and endorsement through user-generated content, which in turn provides enormous revenue to TikTok.

**B.  THE VALUE TIKTOK PROVIDES**

24.     TikTok stands apart from any other social media platform since it is primarily an entertainment platform rather than a lifestyle platform, where anybody can become a creator. It offers an intriguing value proposition to all its customer segments, but as controls are lacking, it can also serve as a platform for individuals seeking to profit from the theft and unlawful use of the persona, voice, content, and/or likeness of others such as Ms. Frankel and Class Members.

**i.  *For Users***

25.     The platform allows its users to be themselves and not pretend to be in a staged environment where individuals display an image of the life, they wish they were experiencing. Therefore, TikTok is a place where users can have fun, be silly, and try new things.

6

26.     As far as the consumers are concerned, TikTok provides "Tailored entertainment content" to the consumers, where they'll be shown the content they like. All this is done with the help of its powerful algorithms. Thus, a consumer of TikTok floats in its own content universe. Also, unlike YouTube, which requires users to pick a video from a large number of options, users may view their favorite videos instantly after opening the app and scrolling down to another video, saving time and energy. The short-form nature of its videos considers how Gen Z is recognized to have a shorter attention span.

27.     Likewise, for content creators, it provides anyone with a shot at being discovered and even famous quickly , which could not be achieved as easily on YouTube or Instagram, where the creator builds an audience over months or years. Also, the platform has a low barrier for entry and creativity wherein one need not post unique content to get famous. Simple videos which follow a given trend also have a chance to get viral. Additionally, the platform provides easy-to-use augmented reality, video editing, and music features. Its live streaming feature helps content creators to interact more directly with their audience; during these streams, the site also allows artists to auction off their products.

28.     Thereupon, consuming and generating content on TikTok has become a seamless activity for users due to the short time to watch and create content. What is created and placed on TikTok can be viewed countless times by the individuals who use and access the platform, which can and does in fact compound the damage to Ms. Frankel and Class Members when their respective persona, voice, content, and/or likeness are used without their consent to sell counterfeit goods.

### ii.  *For Advertisers*

29.     In regard to the advertisers, running ads on TikTok can lead to a significant increase in brand engagement. Here, the advertisers may directly engage influencers that fit their target

market demographic through the creator marketplace. The use of "challenges" is another TikTok feature that correlates with its high engagement. In contrast to other social media sites, where a third party manages influencer marketing agreements, TikTok offers a direct partnership.

30.    Providing the entertainment quotient to its consumers, social validation to the creators, and a whopping engagement rate to the advertisers, TikTok successfully fulfills its customer segment's requirements.

### C.  HOW TIKTOK OPERATES

31.    After installing the app, a user can instantly begin exploring videos. However, to upload your own video, one must first create an account by registering with an email address, phone number, or a third-party platform such as Facebook, Instagram, or Twitter.

32.    After setting up the profile, a user can navigate through various sections of the app, which include:

Home: It displays two feeds that a user can switch between: Following and For you.

Discover: It shows a user's videos that have been tagged with a trending hashtag.

Create video: This opens up the record screen, where a user can record a video.

Inbox: It displays all activity on a user's videos in one place.

Profile: This is visible to both the user and other users.

33.    Below is a rundown of the key activities that TikTok provides to its customers:

### i.  *Explore Videos*

34.    The TikTok experience revolves around videos. Thus, a user can watch an infinite number of videos ranging from comedy, gaming, DIY, food, sports, memes, pets, and so on.

### ii.  *For You Section*

35.    TikTok's "For You" page, which functions as a homepage, is the first thing users see. Here, users can see a stream of videos tailored to their preferences, making it simple to

discover new content and creators. This feed is driven by an AI recommendation system that curates a personalized feed for each user.

36.     Next to this page is the "following" page to see videos from people a user follows. Also, a series of icons can be found on the right side of every TikTok video. The first takes the user to the creator's profile who originally uploaded it. Then, there's a heart, which works similarly to Instagram's hearts or likes, followed by the comments. Next in the column is a right-pointing arrow for sharing individual TikTok to other platforms. Also, under the share option of someone's video, users can select "React," wherein they may film their reaction while the video is playing and place their overlay video next to the original video. The last icon is the spinning record representing the song excerpt the user is playing in their TikTok.

### iii. *Discover Section*

37.     This section allows users to search and explore the various content available in the TikTok community. This includes popular videos, sound, effects, hashtags, creators, and sponsored content.

### iv. *Create Videos*

38.     Creators are the heart and soul of the platform. Thus, they are provided with an array of tools to customize their videos when they start recording using the plus sign at the bottom of the screen. On the screen, there are several icons such as:

      a.   Speed: helps to capture the video in slow motion or at fast speed.

      b.   Beauty: an AR filter that helps to smooth out their complexion and cover flaws.

      c.   Filters: this three-circled icon at the bottom of the screen allows users to change the camera's color filter.

      d.   Timer: helps to establish an auto-record countdown.

      e.   Sounds: available at the center of the screen, this icon opens up the musical

overlay or sound effect a user wants to use.

39.     Additionally, creators can also engage in:

    a.  <u>Duets</u>: This feature allows users to record a video alongside another video. It can range from genuine collabs, remixes, spoofs and so on. Usually, users use this feature to promote tracks and communicate with fans.

    b.  <u>Challenges</u>: Also known as TikTok Trends, it's basically creating a video using a famous song or hashtag. Trending tunes and hashtags like #eyelipsface, #dontjudgemechallenge, #bottlecapchallenge, #ButHaveYouSeen and #fliptheswitch encourages users to try out new dancing techniques or come up with their own spin on a topic and thus increase their views or followers.

    c.  <u>Follow other users</u>: In order to keep up with a wonderful creator, a user can "follow them" by clicking the icon with their profile image and a plus sign above the heart button on their video. One can also scan their TikCode to locate them, and the TikCode is beneficial for companies or individuals who wish to advertise their TikTok channel on other websites or in person. Every user has their Tikcode located on the profile page in the upper right with four squares.

**D.  HOW TIKTOK OPERATES**

40.     TikTok has paid partnerships with a number of celebrities and popular influencers from various social media platforms. These celebrities and influencers generate viral content and talk about the platform to their respective audiences in an effort to drive new users to TikTok. For instance, when TikTok was first released in Japan, the platform partnered with celebrities such as Yukina Kinoshita, Kyary Pamyu Pamyu, and Naomi Watanabe to attract local audiences. Similarly in the United States, talk show host Jimmy Fallon's interest in the app grew organically but evolved into a paid partnership which caused a record spike in enrollments. Jimmy Fallon began a

"challenges" portion on his show in November 2018. He challenged his followers to take the #TumbleweedChallenge and share videos of themselves rolling around like a tumbleweed on TikTok. Within a week, the challenge had attracted over 8,000 entries and 10.4 million engagements.

41.     In addition to celebrity and influencer endorsements, TikTok has also partnered with marketers who are distinguished professionals who design, implement and track ad campaigns across specialties like campaign management, measurement, creative, effects, commerce and sound.

42.     <u>Campaign Management Partners</u>: They assist advertisers in capitalizing fully on the platform's ad offering with the help of cutting-edge technologies. adMixt, Borscht, Buzohero, and customer acquisition are some of the agencies under this partnership.

43.     <u>Measurement Partners</u>: They guide brands in analyzing and measuring the total impact of TikTok's business solutions by providing premium services. Nielsen, Adjust, and AppsFlyer are some of the measurement partners.

44.     <u>Creative Partners</u>: They have the audiovisual and technological skills to assist businesses in generating ads on a large scale. For instance, Canva, Cooler, and Airtarget are some of the prominent creative partners.

45.     <u>Effects Partners</u>: They know everything about TikTok's AR offering, tools and specializes in producing and developing augmented reality effects. Ignite XR, Genero and Byte are established effects partners of the platform.

46.     <u>Commerce Partners</u>: They specialize in marketing techniques to facilitate merchants to establish and manage their businesses effectively. These include Shopify, Productsup, and Square.

47.    <u>Sound Partners</u>: Their expertise enables brands to lean in and make an impact with sound. Some of the sound partners are The Elements Music and KARM.

## E.  TECHNOLOGICAL RESOURCE: A UNIQUE AI ALGORITHM

48.    TikTok adopted Douyin's sophisticated AI-based algorithm to develop and deliver its offering. The algorithm is designed such that it frees consumers from having to choose from a plethora of video options by providing personalized recommendations that are based on a combination of factors like:

   a.  <u>User Interactions</u>: such as videos users like or share, the accounts they follow, the comments they make, videos they've added to their favorites, videos they've marked as "Not Interested", videos they've reported as inappropriate and the content they create.

   b.  <u>Video Information</u>: which is based on the content a user searches on the Discover tab, such as Captions, Sounds, Hashtags, Effects, and Trending topics.

   c.  <u>Device and Account Settings</u>: that include language preference, and device type.

49.    Moreover, the algorithm does not recommend duplicate content, videos already seen by the user, or videos flagged by the user as spam and potentially disturbing content. Also, the algorithm is inclusive and does not make suggestions based on the number of followers. Thus, if a user creates outstanding content that speaks directly to the target audience, that content has just as much chance as the biggest TikTok stars of landing on another user's For You page.

## F.  TIKTOK'S KEY CHANNELS

50.    The TikTok app, available for both iOS and Android operating systems, is the primary channel via which the company provides services to its customers. The company also has a website that enables the customers to explore the various instructions on how to go about the app as well as the various features incorporated in the app.

### G. TIKTOK'S REVENUE MODEL

51.     As per reports, TikTok generated an estimated $1.9 billion in revenue in 2020, a 457% increase from $350 million in 2019. This was possible because of its two primary sources of revenue: advertisements and in-app purchases.

#### v.   *TikTok Ads*

52.     In June 2020, TikTok launched "TikTok for Business", a new advertising option that allowed brands to promote their products on the platform through in-feed videos, brand takeovers, hashtag challenges, and branded effects.

#### vi.   *In-Feed Video Ads*

53.     These short-form videos get displayed between the user's feeds as they browse through the "For You" page. The unique proposition is that these ads appear between videos and might take up the entire screen, similar to Instagram stories.

#### vii.  *Brand Takeover Ads*

54.     These are the ads that get displayed right after you open your TikTok account and have the potential to bring in a lot of money for TikTok. The display of such ads can cost anything from $50,000 to $100,000.

#### viii.    *Top-View Ads*

55.     Unlike brand takeover ads, which gets displayed when a user first opens the app, top-view ads appear after the user has already started using it and can last up to 60 seconds.

#### ix.  *Branded Hashtag Challenges*

56.     The branded hashtag challenge is one of TikTok's most lucrative revenue streams.

57.     In these ads, brands create their own hashtag challenge and pay TikTok to have their tag appear on people's discovery pages. Now, these challenges direct the user to the challenge's main page, where they can see the detailed instructions.

58.     TikTok charges a hefty amount for such an ad, which can be more than $100,000 for the first six days of a hashtag challenge, plus an extra fee that can easily range from $100,000 to $200,000 to promote the challenge.

**x.   *Branded Effects***

59.     TikTok also provides branded custom stickers, augmented-reality filters, and lenses for consumers to use in their videos. Each branded effect can last up to 10 days, giving users adequate time to connect with the brand. TikTok generates money when brands buy these ads to reach their worldwide audiences. With 2-D and 3-D Augmented reality branded lenses, TikTok is making the platform more participatory and fun. In combination with the hashtag challenge, these lenses have the potential to make the campaign more engaging. TikTok enables a company to create its own lenses. These can also assist the user in getting a better view of the goods before purchasing them.

**xi.  *In-App Purchases***

60.     Before TikTok for Business was introduced, the mainstream of revenue was in-app purchases. Under this scheme, creators with substantial followers can earn virtual gifts from their followers by broadcasting a live video. If users like the material, they can tip them with virtual gifts; however, each gift is worth a set number of virtual coins, which must be purchased with real money through the app. Users purchase virtual coins and then can use those coins to send gifts to their favorite content creators.

**xii. *Commission From Content Creators***

61.     A creator has the option to withdraw all tips gifted to them in exchange for real money. The catch is that the withdrawals are subject to commissions that TikTok takes from the coins' value. Typically, users can withdraw money from their account only when they achieve a certain monetary threshold, along with a maximum daily limit for the withdrawals.

62.     Thus, TikTok makes money on the front end when users buy TikTok coins, and on the back end when a content creator requests a withdrawal.

## H.  TIKTOK ENCOURAGES CONTENT CREATION TO DRIVE TRAFFIC

63.     In August 2018, TikTok launched its video-creation and sharing social media platform in the United States. In less than a year, the TikTok app skyrocketed in popularity, landing it as the most popular iPhone app downloaded in the United States in 2021 and the most popular app downloaded globally in 2020 and 2021.[1] With an eye-popping 1 billion monthly active users worldwide and 2020 revenues estimated at over $19 billion dollars[2] the TikTok app is one of the most popular entertainment apps for mobile devices in the United States and the world. TikTok has surpassed 3 billion mobile downloads worldwide.[3] Morning Consult ranked TikTok as the third fastest growing brand of 2020, after only Zoom and Peacock. Cloudflare ranked TikTok as the most popular website of 2021, surpassing Google.

64.     The TikTok app has acquired one of the largest installed user bases in the country on the strength of its popular 60-second videos of fun activities like dancing, lip-syncing, and stunts.

65.     TikTok has provided a platform for users to create content not only for fun, but also for money. As the platform has grown significantly over the past few years, it has allowed companies to advertise and rapidly reach their intended demographic through influencer marketing. The platform's AI algorithm also contributes to the influencer marketing potential, as it picks out content according to the user's preference. Sponsored content is not as prevalent on the platform as it is on other social media apps, but brands and influencers still can make as much

---

[1] https://influencermarketinghub.com/tiktok-stats/ (last accessed October 3, 2022).
[2] *Ibid*.
[3] *Ibid*.

as they would if not more in comparison to other platforms. Influencers on the platform who earn money through engagement, such as likes and comments, are referred to as "meme machines."

66.     In the 2nd quarter of 2021, TikTok users spent more than $535 million through their app.[4]

67.     In 2021, *The New York Times* reported that viral TikTok videos by young people relating the emotional impact of books on them, tagged with the label "BookTok," significantly drove sales of literature. Publishers were increasingly using the platform as a venue for influencer marketing.

68.     In October 2020, the ecommerce platform Shopify added TikTok to its portfolio of social media platforms, allowing online merchants to sell their products directly to consumers on TikTok.

69.     Some small businesses have used TikTok to advertise and to reach an audience wider than the geographical region they would normally serve. The viral response to many small business TikTok videos has been attributed to TikTok's algorithm, which shows content that viewers at large are drawn to, but which they are unlikely to actively search for (such as videos on unconventional types of businesses, like beekeeping and logging).

70.     In 2020, digital media companies such as Group Nine Media and Global used TikTok increasingly, focusing on tactics such as brokering partnerships with TikTok influencers and developing branded content campaigns. Notable collaborations between larger brands and top TikTok influencers have included Chipotle's partnership with David Dorbik in May 2019 and Dunkin' Donuts' partnership with Charli D'Amelio in September 2020.

71.     The TikTok app is not an e-commerce site. Yet content on TikTok facilitates the

---

[4] *Ibid.*

sale of goods, particularly counterfeit ones.

72.     With videos getting tens of millions of views, promoting counterfeit products on TikTok has become a growing issue. Countless creators post on TikTok, looking for ways to get more views. Hijacking the likenesses, images, and voices of well-known influencers, like Plaintiff, has become commonplace.

73.     When creators realize that posts about 'dupe' goods bring more views, they try to win this audience. They review the goods, showcase, and often praise them—openly and proudly.

74.     When enough influencers do this and enough people watch, it becomes a trend. Now you feel cool going on a "treasure hunt."

75.     The powerful AI on TikTok quickly learns what content you like. Interested in replica handbags? The algorithm will offer it on the For You page.

76.     An increasing number of young content creators on the TikTok social network are promoting counterfeit goods, with videos receiving tens of millions of views. One influencer told *World Trademark Review* that there is a "large audience" for TikTok posts about 'dupe' items purchased on online marketplaces – and says that fashion brands need to adapt or risk fake products becoming trendy to the younger generation.

77.     In November 2020, fashion blog *StyleCaster* reported on "the world of DHGate" on TikTok, wherein "knockoff design bags" are "being flaunted on TikTok" and "praised for the reasonable price tags." It appears the videos, which were being promoted to TikTok users in their "For You" page on the platform's app, involve influencers purchasing fake items on the Chinese e-commerce marketplace DHGate (and occasionally on Amazon and AliExpress) and then reviewing them on TikTok videos. This content appears on TikTok hashtags including #dhgate (which at the time had a staggering 148 million views), as well as commonly on the hashtags

#dupe (which at the time had 181 million views) and #replica (which at the time had 52 million views).

78.     A closer look reveals how this content is proving successful for some TikTok influencers. At the time, various TikTok content creators and account holders who had previously posted videos with minimal exposure (numbering in the hundreds of views) posted videos with these viral hashtags and saw an increase in magnitude of views—some amassing hundreds of thousands if not millions of views (compared with the minimal exposure of their videos that did not contain the viral hashtags).

79.     The incentive for TikTok to engage in the unlawful conduct of permitting the use of Ms. Frankel and Class Members' content and likenesses despite the lack of permission to do so is simple; TikTok like many other social media platforms, generates revenue through three ways:

    a.     First, in-app purchases. TikTok employs in-app virtual currency that TikTok account holders can purchase with real money. TikTok's revenue from these in-app purchases has ballooned over the past few years, from $7.4 million in April 2019, $78 million in May 2020. In-app revenue has since dwarfed those numbers, amassing $824 million quarterly consumer spending in the last quarter of 2021.

    b.     Second, commission from content creators. After a content creator accepts coins from their audience, that content creator then has the option to withdraw them in exchange for currency. Upon withdrawal, TikTok takes a percentage of the money withdrawn from the applications.

    c.     Third, advertisements. Since June 2020, TikTok opened another revenue stream where brands may advertise on the platform using in-feed ads, takeovers, branded hashtag challenges, and other activities designed to increase the visibility of the

brand and any products associated with that brand.

## I. THE VOICE AND IMAGE OF MS. FRANKEL AND CLASS MEMBERS ARE PROPERTY RIGHTS AND SUBJECT TO PROTECTION

80. Copyright protection, as defined by 17 U.S.C. §102(a), is available for "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device."

81. This statutory requirement has been distilled into two required elements: (1) originality and (2) fixation.

82. The Supreme Court has set a low bar for originality. In *Feist Publications, Inc. v. Rural Tel. Serv. Co.* the Court stated that "[o]riginal, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." 499 U.S. 340, 345 (1991). The Court went on to state that the "vast majority of works make the grade quite easily, as they possess some creative spark." *Id.*

83. The copyrighted voice files easily satisfy this standard for originality. The various designs were created by Ms. Frankel who has subsequently copyrighted this material. The stylization and artistic nature of the voice files is certainly sufficient to satisfy the "minimal degree of creativity" requirement. *Feist Publications, Inc.*, 499 U.S. at 345.

84. The copyrighted voice files also satisfy the fixation requirement. The definitions section of the Copyright Act provides that "A work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. §101. The copyrighted

voice files are electronically stored and permanent unless deleted, clearly stable and able to be perceived for much more than a transitory duration.

85.     Additionally, to be copyrightable, a subject must qualify as a "work" under the Copyright Act. 17 U.S.C. §102(a) lists eight works-of-authorship categories. Of those eight categories, tattoos are protected as copyrightable under the seventh, which covers "sound recordings." 17 U.S.C. §102(a)(7).

86.     The definitions section of the Copyright Act provides that "sound recordings" are "works that result from the fixation of a series of musical, spoken, or other sounds, but not including the sounds accompanying a motion picture or other audiovisual work, regardless of the nature of the material objects, such as disks, tapes, or other phonorecords, in which they are embodied." 17 U.S.C. §101.

87.     Further, under New York law, "[a]ny person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained . . . may sue and recover damages for any injuries sustained by reason of such use . . . ." N.Y. Civ. Rights Law § 51. And "if the defendant shall have knowingly used such person's name, portrait, picture, or voice in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages." *Id.*

## J.  IRREPARABLE HARM TO MS. FRANKEL AND CLASS MEMBERS

88.     As a direct consequence of TikTok's unauthorized conduct, Ms. Frankel has suffered significant injury and irreparable harm.

89.     Ms. Frankel has invested substantial effort in preserving, protecting, and honing her reputation, and has amassed substantial goodwill and a favorable reputation during her career. By misappropriating Ms. Frankel's voice and likeness, TikTok has not only traded on Ms. Frankel's earned goodwill but are also depriving Ms. Frankel of the ability to control her

reputation. The same holds true for putative Class Members.

90.     Although now removed from TikTok's platform, numerous videos and content were created and shared on TikTok using Ms. Frankel's name, portrait, picture, voice, and content to peddle unauthorized and fake goods. As a result, Ms. Frankel began receiving comments from her followers thinking that Ms. Frankel "sold out" and was "hocking" these fake products. In a recent video, Ms. Frankel posted about this experience and as of this filing had nearly 3,000 comments.[5] Those comments are replete with users informing that they viewed these videos and contents using Ms. Frankel's name, portrait, picture and voice from other accounts peddling counterfeit goods. Comments from users includ: "Saw it and thought W[hat ]T[he ]H[ell]. Good to know. Get 'em B[ethenny]"; "I just saw that [fraudulent] ad with you twice in the past five minutes"; "Must be infuriating. I just saw the ad and immediately jumped here. Get them!"; "Omg I totally thought they paid you for that ad!"; "I almost bought that cardigan"; and "Wow I am so glad you address that because I saw on my F[or ]Y[ou] page and had to look twice when I saw the shop tag this has got to stop.".[6]

91.     Because these videos are not policed by TikTok, and its desire for revenue motivates it to allow this unlawful conduct to occur and to continue , and content creators such as Ms. Frankel and other Class Members are required to constantly monitor for and police any unauthorized use of their name, portrait, picture and voice to ensure that counterfeiters and other unauthorized parties do not peddle counterfeited and other unauthorized products using their personas, voices, content, or likenesses. This requires substantial time and investment from the content creators, effort which is not always successful, and it is not compensated by TikTok in any form whatsoever.

---

[5] *See* https://www.tiktok.com/t/ZTRatt7gq. (last accessed October 3, 2022).
[6] *Ibid.*

21

92.     That scammers are marketing counterfeit goods under the pretense of being legitimate retailers and advertisers on TikTok is no secret.[7] According to the Federal Trade Commission, social media scams accounted for $770 million in 2021, nearly a quarter of all reported fraud losses in the US and almost triple the $258 million lost in 2020.[8]

93.     If TikTok is not enjoined from misappropriating and continuing to disseminate the personas, voices, content, and likenesses of Ms. Frankel and the class, Ms. Frankel and Class Members will continue to suffer irreparable harm.

94.     Because Ms. Frankel's reputation, and the reputation of other Class Members, will be irreparably harmed if TikTok is not enjoined, money damages cannot sufficiently compensate Ms. Frankel or Class Members for the damage caused by TikTok's unauthorized acts.

95.     In contrast, TikTok will not suffer any cognizable or irreparable injury if enjoined.

## CLASS ACTION ALLEGATIONS

96.     Ms. Frankel brings this nationwide class on behalf of herself and on behalf of all others similarly situated pursuant to Rules 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

97.     The Nationwide Class that Ms. Frankel seeks to represent is defined as follows:

> All residents of the United States whose personas, voices, content, or likenesses are unlawfully used on TikTok to sell counterfeit goods.

98.     Excluded from the Class are the following individuals and/or entities: TikTok and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which TikTok has a controlling interest; all individuals who make a timely election to be

---

[7] https://www.marketingbrew.com/stories/2022/02/24/tiktok-is-full-of-alleged-scam-artists-pretending-to-be-real-advertisers (last accessed October 3, 2022).
[8] https://www.ftc.gov/news-events/data-visualizations/data-spotlight/2022/01/social-media-gold-mine-scammers-2021 (last accessed October 3, 2022).

excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

99.     Ms. Frankel reserves the right to modify or amend the definitions of the proposed class (including adding any additional class) before the Court determines whether certification is appropriate.

100.    Numerosity, Fed R. Civ. P. 23(a)(1): The Class is so numerous that joinder of all members is impracticable. Information to assist in identifying members of the Nationwide class is in the records maintained by TikTok.

101.    Commonality, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include:

   a.  Whether and to what extent TikTok has a duty to protect the personas, voices, content, and likenesses of Ms. Frankel and Class Members from unauthorized use on TikTok's platform;

   b.  Whether TikTok failed to adequately protect the personas, voices, content, and likenesses of Ms. Frankel and Class Members from unauthorized use on TikTok's platform;

   c.  Whether TikTok violated the law by failing to promptly notify Ms. Frankel and Class Members that their respective personas, voices, content, and likenesses were being used without their authorization;

   d.  Whether TikTok failed to implement and maintain reasonable procedures and

practices appropriate to the nature and scope of ensuring the personas, voices, content, and likenesses of Ms. Frankel and Class Members were not being used without their authorization;

e.  Whether TikTok engaged in unfair, unlawful, or deceptive practices by failing to ensure the personas, voices, content, and likenesses of Ms. Frankel and Class Members were not being used without their authorization;

f.  Whether Plaintiffs and Class Members are entitled to actual, damages, statutory damages, and/or punitive damages as a result of TikTok's wrongful conduct;

g.  Whether Plaintiffs and Class Members are entitled to restitution as a result of TikTok's wrongful conduct; and

h.  Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of TikTok failing to adequately implement and maintain reasonable procedures and practices to ensure personas, voices, content, and likenesses are only used with appropriate authorization.

102.  <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3): Ms. Frankel's claims are typical of those of other Class Members because all had their personas, voices, content, and likenesses used without their authorization and due to TikTok's failure to ensure this misuse did not occur.

103.  <u>Policies Generally Applicable to the Class,</u> Fed. R. Civ. P. 23(b)(2): This class action is also appropriate for certification because TikTok has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. TikTok's policies challenged herein apply

to and affect Class Members uniformly and Ms. Frankel's challenge of these policies hinges on TikTok's conduct with respect to the Class as a whole, not on facts or law applicable only to Ms. Frankel.

104.    <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4): Ms. Frankel will fairly and adequately represent and protect the interests of the Class Members in that she has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Ms. Frankel seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages she has suffered are typical of other Class Members. Ms. Frankel has retained counsel experienced in complex consumer class action litigation, and Ms. Frankel intends to prosecute this action vigorously.

105.    <u>Superiority and Manageability</u>, Fed. R. Civ. P. 23(b)(3): The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like TikTok. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

106.    The nature of this action and the nature of laws available to Ms. Frankel and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Ms. Frankel and Class Members for the wrongs alleged because TikTok would

necessarily gain an unconscionable advantage since TikTok would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Ms. Frankel was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

107.    The litigation of the claims brought herein is manageable. TikTok's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

108.    Adequate notice can be given to Class Members directly using information maintained in TikTok's records, as well as using TikTok's platform to provide direct notice.

109.    Unless a Class-wide injunction is issued, TikTok may continue in its failures, TikTok may continue to refuse to provide proper notification to Class Members regarding the unauthorized use of their personas, voices, content, and likenesses, and TikTok may continue to act unlawfully as set forth in this Complaint.

110.    Further, TikTok has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

111.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

**COUNT I**
**Right of Publicity**
**On Behalf of Ms. Frankel and the Nationwide Class**

112.     Ms. Frankel incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 111 above.

113.     TikTok has engaged in the unlawful and unauthorized use of Ms. Frankel's image and likeness, as well as those of other Class Members, in connection with the services of the TikTok platform. Ms. Frankel's right of publicity and that of Class Members has been breached and violated because her likeness has been published, on the Internet, and in connection with TikTok's services, without her consent.

114.     As a result of TikTok's conduct, Ms. Frankel and Class Members have suffered substantial harm, including but are not limited to: (1) the emotional distress of having their likeness exploited without their consent; (2) the loss of the ability to control the dissemination of their personas, voices, content, and likenesses; and (3) the loss of the ability to control the association of their personas, voices, content, and likenesses.

115.     A causal connection exists between the use of the personas, voices, content, and likenesses of Ms. Frankel and Class Members by TikTok, and the reputational and privacy damages suffered by Ms. Frankel and the Class. The damages suffered by Ms. Frankel and Class Members are the logical, direct, and immediate consequence of TikTok's actions.

116.     Unless TikTok is enjoined from continuing the aforementioned unlawful acts, Ms. Frankel will continue to suffer irreparable harm.

**COUNT II**
**Right of Publicity**
**N.Y. Civil Rights Law § 51**
**On Behalf of Ms. Frankel and the Nationwide Class**

117.     Ms. Frankel incorporates by reference as though fully set forth herein the

27

allegations contained in paragraphs 1 through 111 above.

118.    Ms. Frankel and Class Members have a property right in their respective personas, voices, content, and likenesses.

119.    Ms. Frankel and Class Members did not authorize counterfeiters to use their respective personas, voices, content, and likenesses.

120.    TikTok has failed to police or otherwise monitor the misuse of Ms. Frankel's and Class Members' personas, voices, content, and likenesses.

121.    Because TikTok monetizes account holders' use of the application and targeted advertisements therein, and does so in New York, the unauthorized use of Ms. Frankel's and Class Members' personas, voices, content, and likenesses resulted in advertising revenue to TikTok.

122.    New York law forbids this practice under Civil Rights Law Section 51.

123.    As a result of TikTok's conduct, Ms. Frankel has suffered substantial harm insofar as her persona, voice, content, and likeness have been used without her consent and permission and to the detriment of her persona and brand equity. This is equally true for Class Members.

124.    Accordingly, Ms. Frankel seeks monetary damages on behalf of herself and Class Members.

125.    Unless TikTok is enjoined from continuing the aforementioned unlawful acts, Ms. Frankel and Class Members will continue to suffer irreparable harm.

### COUNT III
### Common Law Unfair Competition
### On Behalf of Ms. Frankel and the Nationwide Class

126.    Ms. Frankel incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 111 above.

127.    TikTok's unauthorized use of Ms. Frankel's image and likeness has allowed

TikTok to falsely suggest that certain products are sponsored by or otherwise affiliated with Ms. Frankel when, in fact, they are not. The same holds true for Class Members.

128.   TikTok have engaged in such acts intentionally or with reckless disregard for whether the public is confused and deceived regarding the nature, approval, sponsorship, endorsement, and/or authorization by Ms. Frankel and other Class Members.

129.   TikTok's unauthorized use is likely to cause confusion, mistake, and deception among consumers.

130.   TikTok intentionally adopted the use of Ms. Frankel's likeness to exploit the goodwill and reputation of Ms. Frankel. The same is true for Class Members.

131.   TikTok's conduct constitutes unfair competition and was deliberate, willful, and intended to exploit unlawfully the goodwill and reputation associated with Ms. Frankel and her likeness, for the economic and commercial benefit of TikTok, and to the economic and reputational harm of Ms. Frankel. The same is true of Class Members.

132.   As a result of TikTok's conduct, Ms. Frankel and Class Members have suffered substantial harm.

133.   Unless TikTok is enjoined from continuing the aforementioned unlawful acts, Ms. Frankel and Class Members will continue to suffer irreparable harm.

**COUNT IV**
**Permanent Injunctive Relief**
**On Behalf of Ms. Frankel and the Nationwide Class**

134.   Ms. Frankel incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 111 above.

135.   TikTok is and continues to engage in the unlawful conduct set forth in this Complaint. Unless restrained and enjoined, TikTok will continue to engage in such unlawful

conduct.

136.    TikTok's unauthorized and unlawful use of Ms. Frankel's image, likeness, and content has caused Ms. Frankel and Class Members irreparable injury. Ms. Frankel has invested substantial effort in preserving, protecting, and honing her reputation, and has amassed substantial goodwill and a favorable reputation during her career. By misappropriating Ms. Frankel's image, likeness, and content, TikTok has not only traded on Ms. Frankel's earned goodwill, but is also depriving her of the ability to control her reputation. The same is true for Class Members.

137.    Neither Ms. Frankel nor Class Members have an adequate remedy at law, rendering equitable relief appropriate in that damages cannot compensate Ms. Frankel and Class Members for the injuries they have suffered.

138.    In balancing the hardships between Ms. Frankel and Class Members on the one hand, and TikTok on the other, a remedy in equity is warranted.

139.    Furthermore, because the public has an interest in not being deceived, the public interest would be served by a permanent injunction restraining TikTok's unauthorized as well as TikTok's permitting the unauthorized use of Ms. Frankel's and Class Members' respective image, likeness, and content by others on TikTok's platform.

## JURY DEMAND

Ms. Frankel requests a jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Bethenny Frankel demands judgment against the TikTok as follows:

1.    Certifying a class under 23(b)(2), (b)(3), and (c)(4);

2.    Appointing Ms. Frankel as the class representative and her counsel as counsel for

the class;

3.        Adjudging that TikTok violated Ms. Frankel's and Class Members' right of
          publicity;

4.        Adjudging that TikTok engaged in unfair competition by misappropriating Ms.
          Frankel's and Class Members' image, likeness, and content in conjunction with the
          TikTok platform;

5.        Preliminarily and permanently enjoining TikTok, its affiliates, employees, agents,
          and representatives, and all persons acting in concert with or participating with
          TikTok, from using, disclosing, disseminating, posting, displaying, sharing,
          distributing, copying, advertising, or selling, in any manner whatsoever, (i) all
          services of TikTok and (ii) all copies of any materials (in paper, electronic, or any
          other form) that contain or reflect any information derived from Ms. Frankel's and
          Class Members' personas, voices, content, and/or likenesses;

6.        Preliminarily and permanently ordering TikTok, their affiliates, employees, agents,
          and representatives, and all persons acting in concert with or participating with
          TikTok, to immediately and permanently dispose of: (i) all copies of the
          unauthorized usage; and (ii) all copies of any materials (in paper, electronic, or any
          other form) that contain or reflect any information derived from Ms. Frankel's and
          Class Members' personas, voices, content, and/or likenesses;

7.        Preliminarily ordering TikTok, its affiliates, employees, agents, and
          representatives, and all persons acting in concert with or participating with TikTok,
          to turn over to the Court any proceeds that TikTok has received as a result of its
          misappropriation and use of Ms. Frankel's and Class Members' personas, voices,

content, and/or likenesses, such proceeds to be held in constructive trust until the

conclusion of this litigation;

8.    Awarding Ms. Frankel and the Class damages in an amount to be determined at

trial;

9.    Awarding Ms. Frankel and the class restitution for TikTok's facilitation of past and

unauthorized use of their personas, voices, content, and likenesses; and

10.    Pre-judgment and post-judgment interest.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands that this matter be tried before a jury.

Date: October 6, 2022          Respectfully Submitted,

*/s/ Jonathan M. Sedgh*
Jonathan M. Sedgh
MORGAN & MORGAN
850 3rd Ave, Suite 402
Brooklyn, NY 11232
Phone: (212) 738-6839
Fax: (813) 222-2439
Email:jsedgh@forthepeople.com

John A. Yanchunis*
Jean Sutton Martin*
Ryan J. McGee*
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Phone: (813) 223-5505
Email: jyanchunis@forthepeople.com
Email: jeanmartin@forthepeople.com
Email: rmcgee@forthepeople.com

*Attorneys for Plaintiff and the Proposed Class*

*\*pro hac vice applications to be submitted*