UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

......................................................................... x

BETHENNY FRANKEL,                                    :

                Plaintiff,                             :     Case No.: 1:22-cv-08503-JMF

          - against -                               :

TIKTOK INC.,                                         :

                Defendant.                            :

......................................................................... x

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO COMPEL ARBITRATION AND MOTION
### <u>TO DISMISS PLAINTIFF'S COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL BACKGROUND ..................................................................... 2

    A.    Parties ................................................................. 2

    B.    Ms. Frankel Joins TikTok and Accepts TikTok's Terms of Service ..................... 2

    C.    The Complaint ................................................................. 5

ARGUMENT ................................................................. 6

I.    MS. FRANKEL MUST BE COMPELLED TO SUBMIT HER CLAIMS TO ARBITRATION ................................................................. 6

    A.    There Is A Valid Arbitration Agreement ................................................................. 7

    B.    The Arbitrator Must Decide Any Challenge To The Scope Of The Arbitration Provision ................................................................. 10

    C.    The Arbitration Agreement Encompasses Ms. Frankel's Claims ......................... 12

    D.    The Court Should Stay This Action Pending Arbitration ................................... 13

II.    MS. FRANKEL'S COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6) ................................................................. 14

    A.    Section 230 Preempts All Of Plaintiff's Claims Against TikTok ......................... 15

        1.    The elements of Section 230 immunity are satisfied here. ....................... 16

        2.    Plaintiff's right of publicity claims do not fall within Section 230's intellectual property exception. ................................................................. 18

        3.    The Court should dismiss the Complaint with prejudice. ......................... 20

    B.    Plaintiff's Claims Fail For Reasons Independent Of Section 230 ....................... 20

        1.    Ms. Frankel fails to state a right of publicity claim. ............................... 20

        2.    Ms. Frankel fails to state a claim for unfair competition. ......................... 21

CONCLUSION ................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abe's Rooms, Inc. v. Space Hunters, Inc.*,
   38 A.D.3d 690 (2d Dep't 2007) ........................................................................................22

*Anderson v. TikTok, Inc.*,
   No. CV 22-1849, 2022 WL 14742788 (E.D. Pa. Oct. 25, 2022) ..........................................17

*Arkin v. DoorDash, Inc.*,
   19-CV-4357 (NGG)(RER), 2020 WL 4937825 (E.D.N.Y. Aug. 24, 2020) ..........................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................................................14

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ..........................................................................................................12

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009) ..............................................17

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003) ...........................................................................................15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..........................................................................................................14

*Bell v. Cendant Corp.*,
   293 F.3d 563 (2d Cir. 2002) ................................................................................................7

*Ben Ezra, Weinstein, & Co. v. Am. Online, Inc.*,
   206 F.3d 980 (10th Cir. 2000) ...........................................................................................16

*Benn v. Playskool, Inc.*,
   No. CV91 0121058S, 1995 WL 155439 (Conn. Super. Ct. Mar. 30, 1995) ..........................19

*Blumenthal v. Drudge*,
   992 F. Supp. 44 (D.D.C. 1998) ..........................................................................................16

*Brikman v. Twitter, Inc.*,
   2020 WL 5594637 (E.D.N.Y. Sept. 17, 2020) .....................................................................20

*Bruce Kirby, Inc. v. Laserperformance (Eur.) Ltd.*,
   No. 3:13-CV-00297 (JAM), 2021 WL 328632 (D. Conn. Feb. 1, 2021) ..............................19

*Burck v. Mars, Inc.*,
  571 F. Supp. 2d 446 (S.D.N.Y. 2008) ................................................................................19

*Camilo v. Lyft, Inc.*,
  384 F. Supp. 3d 435 (S.D.N.Y. 2019) ..................................................................................6

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) ...........................................................................................16

*Champion v. Moda Operandi, Inc.*,
  561 F. Supp. 3d 419 (S.D.N.Y. 2021) ................................................................................21

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
  58 F.3d 16 (2d Cir. 1995) ...................................................................................................12

*Contec Corp. v. Remote Sol., Co., Ltd.*,
  398 F.3d 205 (2d Cir. 2005) ...............................................................................................10

*Cummings v. Soul Train Holdings LLC*,
  67 F. Supp. 3d 599 (S.D.N.Y. 2014) ..................................................................................21

*Cuoco v. Moritsugu*,
  222 F.3d 99 (2d Cir. 2000) .................................................................................................20

*Day v. TikTok, Inc.*,
  No. 21 C 50129, 2022 WL 595745 (N.D. Ill. Feb. 28, 2022) .............................................17

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) .............................................................................................................6

*Domen v. Vimeo, Inc.*,
  433 F. Supp. 3d 592 (S.D.N.Y. 2020),
  *aff'd* 2021 WL 4352312 (2d Cir. Sept. 24, 2021) ........................................................18, 20

*Electra v. 59 Murray Enterprises, Inc.*,
  987 F.3d 233 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 563 (2021) .......................................19

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ........................................................................................................12

*Feld v. Postmates, Inc.*,
  442 F. Supp. 3d 825 (S.D.N.Y. 2020) ...............................................................................7, 9

*Force v. Facebook, Inc.*,
  934 F.3d 53 (2d Cir. 2019) .............................................................................................15, 16

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  139 S. Ct. 881 (2019) ..........................................................................................................18

*Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*,
713 F. Supp. 2d 215 (S.D.N.Y. 2010) .................................................................21

*Genesco, Inc. v. T. Kakiuchi & Co.*,
815 F.2d 840 (2d Cir. 1987), *abrogated on other grounds by*
*Gilmer v. Interstate/Johnson Lane Corp,* 500 U.S. 20 (1991)................................7

*Goodrich v. Waterbury Republican-Am.*
Inc., 188 Conn. 107 (Conn. 1982) ........................................................................19

*Green v. Am. Online (AOL),*
318 F.3d 465 (3d Cir. 2003)..................................................................................17

*Gwathmey Siegel Kaufman & Assocs. Architects, LLC v. Rales*,
518 F. App'x 20 (2d Cir. 2013) ............................................................................11

*Hamm v. Capsule Corp.*,
No. 22-CV-05435 (JSR), 2022 WL 4468028 (S.D.N.Y. Sept. 26, 2022) ...............7

*Hampton v. Guare*,
195 A.D.2d 366 (1st Dep't 1993) .........................................................................22

*Havens v. Hartford Fin. Servs. Grp., Inc.*,
No. 18 CIV. 488 (PGG), 2020 WL 1244235 (S.D.N.Y. Mar. 13, 2020)..................7

*Henry Schein, In., v . Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019) ..........................................................................10, 11, 12

*Herrick v. Grindr LLC,*
765 F. App'x 586 (2d Cir. 2019) ....................................................................16, 17

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
58 F.3d 27 (2d Cir. 1995)......................................................................................22

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
387 F.3d 163 (2d Cir. 2004)....................................................................................6

*Jones v. Dirty World Entm't Recordings, LLC*,
755 F.3d 398 (6th Cir. 2014) ................................................................................16

*JSC Surgutneftegaz v. President & Fellows of Harvard Coll.*,
167 F. App'x. 266 (2d Cir. 2006) ..........................................................................11

*Katz Dochrermann & Epstein, Inc. v. Home Box Office*,
1999 WL 179603 (S.D.N.Y. Mar. 31, 1981) .........................................................14

*Kutluca v. PQ New York Inc.*,
266 F. Supp. 3d 691 (S.D.N.Y. 2017)......................................................................8

*Mathews v. ABC Television, Inc.*,
  No. 88 CIV. 6031(SWK), 1989 WL 107640 (S.D.N.Y. Sept. 11, 1989) ...............................21

*Maxwell v. N.W. Ayer, Inc.*,
  159 Misc. 2d 454 (Sup. Ct. N.Y. Cty. 1993) ...........................................................................22

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017)......................................................................................7, 8, 9

*Micheli & Shel, LLC v. Grubhub Inc.*,
  588 F. Supp. 3d 483 (S.D.N.Y. 2022).........................................................................7, 9, 10

*Mumin v. Uber Techs., Inc.*,
  239 F. Supp. 3d 507 (E.D.N.Y. 2017) ....................................................................................8

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009) .......................................................................................15, 16

*Oldroyd v. Elmira Sav. Bank, FSB*,
  134 F.3d 72 (2d Cir. 1998), *abrogated on other grounds by*
  *Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015).................................................................13

*Ortega v. Uber Techs. Inc.*,
  15-CV-7387 (NGG)(JO), 2017 WL 1737636 (E.D.N.Y. May 2, 2017)................................10

*Paduano v. Express Scripts, Inc.*,
  55 F. Supp. 3d 400 (E.D.N.Y. 2014) ....................................................................................11

*Pincaro v. Glassdoor, Inc.*,
  16 Civ. 6870 (ER), 2017 WL 4046317 (S.D.N.Y. Sept. 12, 2017) ........................................11

*Pirone v. MacMillan, Inc.*,
  894 F.2d 579 (2d Cir. 1990).................................................................................................20

*Ricci v. Teamsters Union Local 456*,
  13-cv-07729 (NSR), 2014 WL 11353151 (S.D.N.Y. Apr. 28, 2014),
  *aff'd*, 781 F.3d 25 (2d Cir. 2015) ...........................................................................................15

*Shaw Grp. Inc. v. Triplefine Int'l Corp.*,
  322 F.3d 115 (2d Cir. 2003).................................................................................................12

*Sheet Metal Workers' Nat'l Pension Fund v. Maximum Metal Mfrs. Inc.*,
  No. 13-cv-7741, 2015 WL 4935116 (S.D.N.Y. Aug. 18, 2015)..............................................13

*Souza v. Exotic Island Enterprises, Inc.*,
  No. 18-CV-9448 (KMK), 2021 WL 3501162 (S.D.N.Y. Aug. 9, 2021)................................19

*Specht v. Netscape Commc'ns Corp.*,
    306 F.3d 17 (2d Cir. 2002)..........................................................................10

*Stephano v. News Group Publications*,
    64 N.Y.2d 174 (1984) ...........................................................................19, 20

*Telecom Int'l Am., Ltd. v. AT&T Corp.*,
    280 F.3d 175 (2d Cir. 2001).....................................................................22

*United States v. Konn*,
    634 F. App'x 818 (2d Cir. 2015) ..............................................................6

*Universal Commc'n Sys. v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007)....................................................................16

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    464 F. Supp. 3d 634 (S.D.N.Y. 2020)......................................................7

*Vera v. Saks & Co.*,
    335 F.3d 109 (2d Cir. 2003).....................................................................12

*Winter v. Facebook, Inc.*,
    No. 4:21-CV-01046 JAR, 2021 WL 5446733 (E.D. Mo. Nov. 22, 2021)...............................17

*Zoll v. Jordache Enterprises, Inc.*,
    2002 WL 31873461 (S.D.N.Y. Dec. 24, 2002) .......................................22

**Statutes**

9 U.S.C. §§
    1.............................................................................................................1, 4
    2.......................................................................................................4, 6, 9
    3.............................................................................................................13

17 U.S.C. § 301 ................................................................................................19

17 U.S.C. § 411(a) ...........................................................................................18

47 U.S.C. § 230 *et seq.*.......................................................................... *passim*

New York Civil Rights Law Article 5 ..............................................................19

New York Civil Rights Law § 50 .............................................................19, 22

New York Civil Rights Law § 51 ................................................................. *passim*

**Other Authorities**

Rule 12(b)(6).................................................................................................1, 14

Defendant TikTok Inc. respectfully submits this motion to compel arbitration and stay proceedings or, alternatively, to dismiss Plaintiff Bethenny Frankel's complaint with prejudice, pursuant to 9 U.S.C. § 1 *et seq.* and Rule 12(b)(6).

## PRELIMINARY STATEMENT

In this putative class action, Plaintiff Bethenny Frankel seeks to hold TikTok liable for failing to effectively moderate content independently conceived, created, and posted on TikTok by third-party users. Ms. Frankel claims these third-party videos used her content to falsely imply she endorsed cheap, imitation goods and, as a result, she attempts to assert right of publicity and unfair competition claims. But Ms. Frankel has no recourse against TikTok in this Court. When Ms. Frankel joined TikTok, she agreed to TikTok's Terms of Service, which expressly provide that any claims "relating in any way to [her] use of TikTok's services" may only be addressed in arbitration and which include an express waiver of any right to bring a class action. Consistent with the rulings of the Second Circuit, since TikTok's Terms of Service were open, obvious, and clear, providing objectively reasonable notice of the arbitration and waiver provisions, Ms. Frankel's agreement to arbitrate is valid and binding. The Court should compel arbitration and stay this action.

This Court need go no further once arbitration is compelled. But, even if Ms. Frankel were not bound by the arbitration clause—and she is—the Complaint fails as a matter of law for several independent reasons. First, all her claims are barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230, which immunizes platforms like TikTok from tort claims arising from user-generated content—precisely the alleged basis for Ms. Frankel's claims. Second, Ms. Frankel brings a common law right of publicity claim and a statutory publicity claim under New York's Civil Rights Law Section 51. Yet, as an alleged Connecticut resident, Ms. Frankel cannot

1

bring a claim under New York's statute; nor does New York recognize common law right of publicity claims. Finally, Ms. Frankel's duplicative unfair competition claim must be dismissed because New York law prohibits the assertion of right of publicity claims disguised as other torts, and because she fails to plead the basic elements of the claim.

## FACTUAL BACKGROUND

### A.   Parties

Plaintiff Bethenny Frankel is a "businesswoman, television personality, entrepreneur, philanthropist, and …author." Compl. ¶ 2. Most relevant to this action, she is also a prolific TikTok content creator and social media "influencer." *Id.* ¶¶ 90, 91. Ms. Frankel joined TikTok in February 2020, and since then, she has posted hundreds of videos and gained over one million followers. *See* Declaration of Josh Stickler ("Stickler Decl."), ¶ 2, Exhibit A, ¶ 14, Exhibit I. Ms. Frankel is a citizen of Connecticut. Compl. ¶ 6.

Defendant TikTok Inc. operates an entertainment platform. Compl. ¶ 9. That service—accessible through browser or smartphone application—allows users to "record, watch, and share short-form video content." *Id.* ¶¶ 12-14. Thus, TikTok offers predominantly user-generated content, which is served directly to creators' followers, sought out by users, or recommended to users. *Id.* ¶¶ 26-28.

### B.   Ms. Frankel Joins TikTok and Accepts TikTok's Terms of Service

Ms. Frankel joined TikTok on February 20, 2020 and posted her first video on March 5, 2020.[1] Stickler Decl. Ex. A. To join and post videos, Ms. Frankel had to agree to TikTok's Terms

---

[1] *Available* at
https://www.tiktok.com/@bethennyfrankel/video/6800920203812162821?is_copy_url=1&is_from_webapp=v1| TikTok

of Service, which include clear and unequivocal arbitration and class waiver provisions. Stickler Decl. ¶¶ 3-11; *see* Compl. ¶ 31.

In February 2020, as now, TikTok's registration process was simple and clear. After choosing to join TikTok, registrants select how they would like to sign up—by phone or email, or through an existing account with a third-party platform. Stickler Decl. ¶ 4. Regardless of how a user elects to join, on the first page, the app warns users that "By continuing, you agree to TikTok's **Terms of Use** and confirm that you have read TikTok's **Privacy Policy.**" Stickler Decl. Exs. C-E (screenshots) (emphasis in original); *Id.* Ex. F (video capture). The bolded phrases "**Terms of Use**" and "**Privacy Policy**" are hyperlinks that direct the registrant to TikTok's Terms of Service and Privacy Policy, respectively. *Id.* Exs. B-F. To continue—and thereby agree to TikTok's Terms of Service—Ms. Frankel (or any user) must select and then click on a button confirming her chosen sign-up method. *Id.* Then, the app again warns the user that by continuing, they agree to the Terms of Service and Privacy Policy and again provides hyperlinks to each agreement. *Id.* The warning appears directly below the entry fields for the user's personal information and directly above the confirmation buttons that the registrant must click to finish creating the account. The interface is minimalist in design. Each screen is white with black and grey text and includes only the information necessary for the sign up process. *Id.* After registering, each time a user (like Ms. Frankel) enters their log-in credentials, they again receive the express warning that by continuing, "you agree to [TikTok's] **Terms of Service**." *Id.* ¶ 11.

TikTok's Terms of Service ("TOS"), last updated in February 2019, contain both an arbitration agreement and a class action waiver. Stickler Decl. Ex. G (TOS). The first section provides notice of both in all capital letters:

ARBITRATION NOTICE FOR USERS IN THE UNITED STATES: THESE TERMS CONTAIN AN ARBITRATION CLAUSE AND A WAIVER OF

3

RIGHTS TO BRING A CLASS ACTION AGAINST US. EXCEPT FOR CERTAIN TYPES OF DISPUTES MENTIONED IN THAT ARBITRATION CLAUSE, YOU AND TIKTOK AGREE THAT DISPUTES BETWEEN US WILL BE RESOLVED BY MANDATORY BINDING ARBITRATION, AND YOU AND TIKTOK WAIVE ANY RIGHT TO PARTICIPATE IN A CLASS-ACTION LAWSUIT OR CLASS-WIDE ARBITRATION.

*Id.,* Sec. 1 (Your Relationship With Us). The TOS also notify the user that "[b]y accessing or using [TikTok's] Services, you confirm that you can form a binding contract with TikTok, that you accept the Terms and that you agree to comply with them." *Id.,* Sec. 2 (Accepting the Terms).

In Section 11 of the TOS, the user agrees that "any…dispute, controversy, or claim…relating in any way to your use of TikTok's services and/or products, including the Services, or relating in any way to the communications between you and TikTok or any other user of the Services, will be finally resolved by binding arbitration." *Id.,* Sec. 11 (Other Terms, Arbitration and Class Action Waiver). The parties also agree to an express delegation clause, specifically that "[t]he arbitrator, and not any federal, state, or local court, will have exclusive authority to resolve any dispute" relating to the arbitrability of any claims. *Id.* The user further agrees that "[a]ny Claim must be brought in the respective party's individual capacity, and not as a plaintiff or class member in any purported class, collective, representative, multiple plaintiff, or similar proceeding….The parties expressly waive any ability to maintain any Class Action in any forum." *Id.* (Class Action Waiver). Indeed, Section 11 expressly and in plain English waives "any right to litigate in court, to have a judge or jury decide [her] case, or to be a party to a class or representative action." *Id.* By creating and continually using her account, Ms. Frankel accepted TikTok's Terms of Service, including the arbitration provision and the waiver of class claims. *Id.,* Sec. 2.

### C.      The Complaint

On October 6, 2022, Ms. Frankel commenced this action on behalf of herself and a putative nationwide class for injunctive relief and damages for violations of 1) rights of publicity, 2) New York's Civil Rights Law § 51, and 3) common law unfair competition.  Compl. ¶¶ 112-39.

By way of background, the Complaint includes extensive allegations describing how users engage with and post on TikTok's "social media platform" where "anybody can become a creator," identifying TikTok's "key channels," and explaining how TikTok allegedly "encourages content creation to drive traffic."  Compl. ¶¶ 12-79.  Eventually, Ms. Frankel turns to her claims and alleges that third-party "companies and individuals have purloined" her likeness, *id.* ¶ 3, and that "numerous videos and content were created and shared on TikTok using Ms. Frankel's name, portrait, picture, voice, and content to peddle unauthorized and fake goods."  *Id.* ¶ 90.  While she acknowledges that any unauthorized videos using her name and likeness are "now removed from TikTok's platform,"[2] *id.*, Ms. Frankel alleges that as a result of this brief alleged misuse, she was harmed "when [she] began receiving comments from her followers thinking that [she] 'sold out' and was 'hocking' these fake products" and consequently has lost the ability to control the association and dissemination of her likeness, suffering emotional distress.  *Id.* ¶¶ 90, 114.  Ms. Frankel alleges that because TikTok does not adequately police the videos and has a "desire for revenue," it is responsible for this improper use of Ms. Frankel's TikTok videos by other users for their own monetary gain.  Compl. ¶¶ 90-91.

---

[2] Ms. Frankel's Complaint never identifies the video content allegedly appropriated by third parties.  But, TikTok's records document that it first received email notice on September 17, 2022, a weekend, identifying certain videos Ms. Frankel was concerned about and by Monday, September 19, 2022, the identified videos were removed from TikTok.  Stickler Decl., Ex. H.

Finally, Ms. Frankel also alleges class-wide harms due to content creators' "promoting counterfeit products on TikTok" and "hijacking the likenesses, images, and voices of well-known influencers" to do so.  *Id.* ¶ 72-78.

## ARGUMENT

## I.   MS. FRANKEL MUST BE COMPELLED TO SUBMIT HER CLAIMS TO ARBITRATION

Ms. Frankel must be compelled to arbitrate.  The Terms of Service specifically provide that the Federal Arbitration Act ("FAA") "governs the interpretation and enforcement of [the Arbitration Agreement]."  Stickler Decl., Ex G, Sec. 11.  Further, Ms. Frankel's access to and use of TikTok—an entertainment platform, allowing worldwide sharing of videos—certainly "involves commerce," independently invoking Section 2 of the FAA.  9 U.S.C. § 2; *United States v. Konn*, 634 F. App'x 818, 821 (2d Cir. 2015) ("there can be no question that the Internet is a channel and instrumentality of interstate commerce"); *Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 439 (S.D.N.Y. 2019) (citing *Konn*, 634 F. App'x at 821) (applying FAA to Lyft's Terms of Service because it "pertains to internet transactions").  Under the FAA, written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

Pursuant to the FAA, a court must compel arbitration where:  (1) a valid agreement to arbitrate exists; and (2) the agreement encompasses the claims at issue.  *See JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004).  When an arbitration provision satisfies both conditions, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4).  As explained below,

both conditions are satisfied here, and Ms. Frankel should be compelled to arbitrate her claims against TikTok.

### A.    There Is A Valid Arbitration Agreement

Courts enforce arbitration agreements where, as here, the contract's terms and conditions are reasonably clear and conspicuous, placing the user on inquiry notice of its terms.  *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 79 (2d Cir. 2017); *Micheli & Shel, LLC v. Grubhub Inc.*, 588 F. Supp. 3d 483, 491–92 (S.D.N.Y. 2022); *Hamm v. Capsule Corp.*, No. 22-CV-05435 (JSR), 2022 WL 4468028, at *4 (S.D.N.Y. Sept. 26, 2022); *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 639-41 (S.D.N.Y. 2020); *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 830–31 (S.D.N.Y. 2020).  The Court should do so here.

The threshold question on a motion to compel is whether the parties have agreed to arbitrate.  "Because an agreement to arbitrate is a creature of contract . . . the ultimate question of whether the parties agreed to arbitrate is determined by state law."  *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002).  Here, the Complaint asserts claims under New York law and specifically alleges that Ms. Frankel's harm "flows directly" from actions conducted in New York. Compl. ¶¶ 6, 11.  Thus, New York law applies.[3]

Under New York's "general contract principles a party is bound by the provisions of a contract that he signs, unless he can show special circumstances that would relieve him of such an obligation."  *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir. 1987), *abrogated on other grounds by Gilmer v. Interstate/Johnson Lane Corp,* 500 U.S. 20 (1991).  A "party will not

---

[3] The result would be the same applying the law of Frankel's domicile.  *Havens v. Hartford Fin. Servs. Grp., Inc.*, No. 18 CIV. 488 (PGG), 2020 WL 1244235, at *6 (S.D.N.Y. Mar. 13, 2020) ("Second Circuit law indicates that contract formation principles under New York and Connecticut law bear substantial similarities.").

be excused from his failure to read and understand the contents of a document . . . [A] party who accepts an agreement is conclusively presumed to know its contents and assent to them." *Kutluca v. PQ New York Inc.*, 266 F. Supp. 3d 691, 701-02 (S.D.N.Y. 2017).   Nor does it make any difference if a party did not negotiate the terms of the contract.   "Even a form contract that is offered on a 'take it or leave it' basis, without a chance to opt out, may be valid." *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 525 (E.D.N.Y. 2017).

There can be no dispute that Ms. Frankel accepted the Terms of Service and, specifically, the arbitration provision.   As in similar cases, Ms. Frankel manifested her assent to the TOS when she signed up for TikTok's services and repeatedly reaffirmed that agreement through her continued use of the account, including the posting of numerous videos on TikTok.   On remarkably similar facts, the Second Circuit found a user signing up for an Uber account was on inquiry notice of an arbitration provision contained in Uber's "Terms of Service" when, like here, Uber provided users "reasonably conspicuous notice of [the] terms of service with a clear and conspicuous hyperlink to the actual TOS." *Meyer*, 868 F.3d at 79.[4]   Specifically, like the registrant in *Meyer*, the TikTok app warns the user that "[b]y continuing, you agree to TikTok's **Terms of Use** and confirm that you have read TikTok's **Privacy Policy**."   Stickler Decl. ¶¶ 5, 8, 11; *Meyer, Inc.*, 868 F.3d at 78 (notice was reasonable when users were warned "By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY").   And, again like *Meyer,* notice of and access to the Terms of Service were provided by hyperlink "simultaneously to enrollment." Stickler Decl. ¶¶ 4, 5, 8, 11.   Finally, consistent with *Meyer,* the TOS interface itself is minimalist

---

[4] *Meyer* applied California contract law but found "that New York and California apply 'substantially similar rules for determining whether the parties have mutually assented to a contract term.'" *Meyer,* 868 F. 3d at 74 (quoting *Schnabel v. Trilegiant Corp.,* 697 F.3d 110, 119 (2d Cir. 2012)).

in design, facilitating easy comprehension.  The signup screen is an uncluttered, white background with black and grey text and includes only essential information.  Stickler Decl. ¶ 5; *see also, Feld*, 442 F. Supp. 3d at 830–31 (granting motion to compel arbitration where hyperlinked warning that "by clicking the Sign Up or Facebook button, you agree to our **Terms of Service** and **Privacy Policy**," was spatially and temporally coupled to the sign-up options and therefore "reasonably conspicuous to the prudent user").

Upon opening the Terms of Service, a notification informing Ms. Frankel and all users that they agree to arbitrate their claims and to waive any class action rights appears in the first section in all capital letters.  Stickler Decl. Ex. F, G; *see Micheli*, 588 F. Supp. 3d at 491–92 (enforcing arbitration agreement containing similar initial warning).  In Section 2, the TOS remind users that "[b]y accessing or using [TikTok's] services, you confirm that you can form a binding contract with TikTok, that you accept the Terms and that you agree to comply with them."  Stickler Decl. Ex. G, Sec. 2 (Accepting the Terms).  The TOS expressly and clearly included a waiver of "any right to litigate in court, to have a judge or jury decide [her] case, or to be a party to a class or representative action."  *Id.,* Sec. 11 (Arbitration and Class Action Waiver).  Users (and Ms. Frankel) further agreed that "any…dispute, controversy, or claim…relating in any way to [her] use of TikTok's services and/or products…or relating in any way to the communications between [herself] and TikTok or any other user of the Services, will be finally resolved by binding arbitration."  *Id.*  Both the design and content of TikTok's TOS are nearly identical to terms enforced in recent cases.  *See Meyer*, 868 F.3d at 74–76; *Micheli*, 588 F. Supp. 3d at 491–92; *Feld*, 442 F. Supp. 3d at 830–31.

Through her initial registration and her continued access and use of her account, Ms. Frankel has clearly manifested assent to the arbitration agreement.  There can be no question that a valid arbitration agreement exists between Ms. Frankel and TikTok.

**B.    The Arbitrator Must Decide Any Challenge To The Scope Of The Arbitration Provision**

Because a valid arbitration agreement exists, Ms. Frankel must be compelled to arbitration. Even if Ms. Frankel claims that this dispute does not fall within the scope of the agreement, the arbitrator, not the Court, must resolve that issue.  *See* Stickler Decl., Ex. G, Sec. 11.

Ordinarily, "[i]f the court finds that the parties agreed to arbitrate, it should then consider whether the dispute falls within the scope of the arbitration agreement."  *Specht v. Netscape Commc'ns Corp.,* 306 F.3d 17, 26 (2d Cir. 2002).  The FAA, however, "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes."  *Henry Schein, In., v . Archer & White Sales, Inc.,* 139 S. Ct. 524, 527 (2019).  "[W]hen … parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."  *Contec Corp. v. Remote Sol., Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005) (citations omitted).  In those circumstances, the Court "possesses no power to decide the arbitrability issue" and must compel arbitration of arbitrability.  *Henry Schein,* 139 S. Ct. at 529; *see also Arkin v. DoorDash, Inc.*, 19-CV-4357 (NGG)(RER), 2020 WL 4937825, at *4 (E.D.N.Y. Aug. 24, 2020) (granting motion to compel arbitration and delegating all issues of arbitrability to the arbitrator); *Ortega v. Uber Techs. Inc.*, 15-CV-7387 (NGG)(JO), 2017 WL 1737636, at *2 (E.D.N.Y. May 2, 2017) (same); *Micheli*, 588 F. Supp. 3d at 491–92 (same).

Here, the parties agreed that "[t]he arbitrator, and not any federal, state, or local court, will have exclusive authority to resolve any dispute relating to the interpretation, applicability,

10

unconscionability, arbitrability, enforceability, or formation of this arbitration agreement, including any claim that all or any part of this arbitration agreement is void or voidable." Stickler Decl. Ex. G, Sec. 11; *see Henry Schein*, 139 S. Ct. at 529-30. Without anything more, this contractual provision strips the Court of the power to decide issues of arbitrability between Ms. Frankel and TikTok.

Further, the TOS incorporate the AAA rules. *See* Stickler Decl., Ex. G, Sec. 11 (Other Terms) ("The arbitration will be administered by the American Arbitration Association under its rules…"). AAA's rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim." Declaration of Elizabeth A. McNamara ("McNamara Decl.") Ex. J, Sec. R-14 (AAA rules). "The Second Circuit has held that where, as here, a broad arbitration provision incorporates the AAA Arbitration Rules, the arbitrator and not the courts must decide the threshold issue of arbitrability." *Pincaro v. Glassdoor, Inc.*, 16 Civ. 6870 (ER), 2017 WL 4046317, at *7 (S.D.N.Y. Sept. 12, 2017) (citing *Contec Corp. v. Remote Sol., Co*., 398 F.3d 205, 208 (2d Cir. 2005)); *see also Gwathmey Siegel Kaufman & Assocs. Architects, LLC v. Rales*, 518 F. App'x 20, 21 (2d Cir. 2013), *JSC Surgutneftegaz v. President & Fellows of Harvard Coll.*, 167 F. App'x. 266, 268 (2d Cir. 2006) ("The intent of the parties to commit the question of arbitrability to the arbitrator is further demonstrated by the incorporation of the rules of the [AAA] that empower the arbitrator to determine issues of arbitrability."); *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 415 (E.D.N.Y. 2014) ("[V]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] . . . rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.") (citation omitted).

Because the parties delegated arbitrability issues to the arbitrator pursuant to the TOS and the AAA rules, the Court should compel arbitration and allow the arbitrator to resolve any purported issues of arbitrability.  *See Henry Schein*, 139 S. Ct. at 529.

### C.   The Arbitration Agreement Encompasses Ms. Frankel's Claims

Even if the Court were responsible for deciding whether the arbitration agreement encompasses Ms. Frankel's claims, there can be no dispute that Ms. Frankel's claims fall squarely within the agreement.  An "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  Where the parties have agreed to a broad arbitration clause, the courts recognize a heightened presumption of arbitrability such that "[i]n the absence of any express provision excluding a particular grievance from arbitration,…only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id*. (citation omitted); *accord Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (holding that broad arbitration clause creates "a presumption that the claims are arbitrable").  "[T]he federal policy in favor of arbitration requires that 'any doubts concerning the scope of arbitrable issues' be resolved in favor of arbitration." *Shaw Grp. Inc. v. Triplefine Int'l Corp*., 322 F.3d 115, 120 (2d Cir. 2003); *see, e.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018) ("Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings.").  To rebut the presumption, the party resisting arbitration must show the agreement clearly does not encompass the claims at issue.  *See Vera v. Saks & Co*., 335 F.3d 109, 117 (2d Cir. 2003).

Here, Ms. Frankel agreed to arbitrate all claims that "relat[e] in any way to [her] use of TikTok's services and/or products," and "to the communications between [Ms. Frankel] and

TikTok."  Stickler Decl. Ex. G, Sec. 11 (Arbitration Agreement).  This expansive phrasing makes it "precisely the kind of broad arbitration clause that justifies a presumption of arbitrability." *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998), *abrogated on other grounds by Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015); *see also Sheet Metal Workers' Nat'l Pension Fund v. Maximum Metal Mfrs. Inc.*, No. 13-cv-7741, 2015 WL 4935116, at *5 (S.D.N.Y. Aug. 18, 2015) ("The operative text here—embracing 'any and all ... disputes ... arising out of or relating to'—makes this a quintessentially broad arbitration clause" which was therefore presumptively enforceable) (alterations in original).

Ms. Frankel's claims stem from the alleged appropriation and misuse of her own TikTok videos by other TikTok users, as well as from TikTok's alleged failure to adequately respond to her requests to remove and police the offending third-party content.  Compl. ¶ 3 (complaining of TikTok's failure to "police" the third-party conduct "[d]espite demands"); *id*. ¶ 90 (alleging that Ms. Frankel was alerted to some allegedly misleading uses of her likeness on TikTok by her own TikTok followers).  Indeed, Ms. Frankel even alleges that she tried to "warn[] consumers" about misleading third-party content by posting her own video on TikTok. *Id*. ¶¶ 3, 90.  There can be no question that Ms. Frankel's claims relate to her use of TikTok and her communications with TikTok.

In short, Ms. Frankel's claims fall squarely within the scope of the broad arbitration provision and are therefore presumptively arbitrable.

### D.    The Court Should Stay This Action Pending Arbitration

Section 3 of the FAA provides that, where a valid arbitration agreement requires parties to submit their dispute to binding arbitration, the district court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  As the Second Circuit succinctly stated, "the FAA mandate[s] a stay of proceedings when all of

13

the claims in an action have been referred to arbitration and a stay requested." *Katz*, 794 F.3d at 347.  Because Ms. Frankel must arbitrate her claims, the Court should stay this action pending completion of arbitration.

## II.   MS. FRANKEL'S COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6)

Even if Ms. Frankel were not required to adjudicate her claims in arbitration (and she is), the Complaint should still be dismissed for failure to state a claim.  The Court must grant a motion to dismiss under Rule 12(b)(6) when a plaintiff fails to allege plausible facts that, if proven, would provide grounds that permit relief under a valid legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (cleaned up).  Any "legal conclusions" in a complaint "must be supported by factual allegations" that suffice to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Ms. Frankel's claims against TikTok arising from alleged third-party content—content that, notably, Ms. Frankel admits was removed from TikTok's platform, Compl. ¶ 90—suffer from fundamental and incurable legal defects that require dismissal with prejudice:  First, her claims are all facially barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230, which immunizes platforms like TikTok from tort claims arising from user-generated content.  Second, Plaintiff resides in Connecticut and therefore cannot assert a right of publicity claim under New York's Civil Rights Law, nor does New York recognize a common law right of publicity claim. Finally, Ms. Frankel's unfair competition claim must be dismissed because New York law prohibits the assertion of right of publicity claims disguised as other torts.

### A.    Section 230 Preempts All Of Plaintiff's Claims Against TikTok

Plaintiff's claims against TikTok must be dismissed because they are preempted by Section 230 of the Communications Decency Act ("CDA").  47 U.S.C. § 230.  Section 230 provides that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  *Force v. Facebook, Inc.*, 934 F.3d 53, 63-64 (2d Cir. 2019) (quoting 47 U.S.C. § 230(c)(1)), *cert. denied*, 140 S. Ct. 2761 (2020).  It precludes liability under any "state or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3).

In enacting Section 230, Congress made a considered decision to create an immunity that applied only to the Internet.  Congress recognized that the "Internet and other interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity," and that such a forum needs protection to flourish.  *Id.* § 230(a)(3).  Given the tremendous number of users that an interactive computer service may have, the "staggering" amount of information that may be communicated, and the difficulties that may be associated with effectively screening it all, *Force*, 934 F.3d at 63 (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997)), Congress wanted "to prevent lawsuits from shutting down websites and other services on the Internet."  *Batzel v. Smith*, 333 F.3d 1018, 1027-28 (9th Cir. 2003).  It accomplished this aim by "bar[ring] state-law plaintiffs from holding interactive computer service providers legally responsible for information created and developed by third parties."  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009); *see also Ricci v. Teamsters Union Local 456*, 13-cv-07729 (NSR), 2014 WL 11353151, at *2 (S.D.N.Y. Apr. 28, 2014) (*per curiam*) ("Congress intended for all interactive computer services that are treated as publishers or speakers of content written by third parties to be immune from liability for those third party comments."), *aff'd*, 781 F.3d 25 (2d Cir. 2015).

To achieve its purposes, Section 230 grants absolute "immunity from suit rather than a mere defense to liability." *Nemet Chevrolet*, 591 F.3d at 254-55.  Thus, "close cases . . . must be resolved in favor of immunity, lest we cut the heart out of [S]ection 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged—or at least tacitly assented to—the illegality of third parties." *Jones v. Dirty World Entm't Recordings, LLC*, 755 F.3d 398, 408 (6th Cir. 2014) (citation omitted).  Following this guidance, courts in this Circuit and across the country have consistently held that Section 230 "should be construed broadly in favor of immunity."  *Force*, 934 F.3d at 64 (collecting cases); *see also Universal Commc'n Sys. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007) ("[W]e too find that Section 230 immunity should be broadly construed."); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003); *Ben Ezra, Weinstein, & Co. v. Am. Online, Inc.*, 206 F.3d 980, 986 (10th Cir. 2000); *Blumenthal v. Drudge*, 992 F. Supp. 44, 49 (D.D.C. 1998).  Application of Section 230 immunity is "appropriate at the pleadings stage" where, as here, "the statute's barrier to suit is evident from the face of" the complaint.  *Force*, 934 F.3d at 63 n.15 (quoting *Ricci*, 781 F.3d at 28).

### 1.    The elements of Section 230 immunity are satisfied here.

Section 230 "shields a defendant from civil liability when: (1) it is a 'provider or user of an interactive computer service,' as defined by § 230(f)(2); (2) the plaintiff's claims 'treat[]' the defendant as the 'publisher or speaker' of information, *id.* § 230(c)(1); and (3) that information is 'provided by' an 'information content provider,' *id.* § 230(f)(3)."  *Force*, 934 F.3d at 64 .

The Complaint itself establishes that TikTok, as an entertainment media platform hosting user-generated content, is an interactive computer service provider.  Compl. ¶¶ 12-14, 26-28; *see also Herrick v. Grindr LLC*, 765 F. App'x 586, 589–90 (2d Cir. 2019) ("[C]ourts have repeatedly concluded that the definition of an [interactive computer service] includes 'social networking sites

. . . which . . . provide subscribers with access to a common server.'"). Indeed, every federal court to consider the issue has concluded that TikTok benefits from Section 230 protections. *See Anderson v. TikTok, Inc.*, No. CV 22-1849, 2022 WL 14742788, at *2 (E.D. Pa. Oct. 25, 2022); *Day v. TikTok, Inc.*, No. 21 C 50129, 2022 WL 595745, at *2 (N.D. Ill. Feb. 28, 2022); *Winter v. Facebook, Inc.*, No. 4:21-CV-01046 JAR, 2021 WL 5446733, at *4 (E.D. Mo. Nov. 22, 2021).

The question, therefore, is whether Ms. Frankel's claims seek to hold TikTok liable as "the publisher or speaker" of "information originating with a third-party user of the service." *Herrick,* 765 F. App'x at 589 (citation omitted). They do. A claim that bases its theory of liability upon the exercise of editorial functions "such as deciding whether to publish, withdraw, postpone or alter content," seeks to treat the defendant as a publisher and is subject to Section 230 immunity. *Id.* at 590 (citation omitted). Here, Ms. Frankel's claims for right of publicity and unfair competition arise from the same core of alleged facts: She complains that third parties allegedly used her likeness to "flaunt" and/or promote counterfeit goods in content posted to TikTok in order to take advantage of the "large audience" for content relating to "dupe" goods. *See* Compl. ¶¶ 3, 5, 72-78. Ms. Frankel seeks to hold TikTok liable under common law and statutory right of publicity and unfair competition law for "permitting" and failing to "polic[e]" this third-party content. *Id*. ¶¶ 24, 79, 91.

Section 230 immunizes platforms from claims arising from precisely this kind of conduct—namely, the failure to remove content posted by third parties. "[R]emoving content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th Cir. 2009), *as amended* (Sept. 28, 2009); *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003) (Section 230 prescribed plaintiff's "attempts to hold AOL liable

17

for decisions relating to the monitoring, screening, and deletion of content from its network—actions quintessentially related to a publisher's role"); *Domen v. Vimeo, Inc.*, 433 F. Supp. 3d 592, 602–03 (S.D.N.Y. 2020), *aff'd* 2021 WL 4352312 (2d Cir. Sept. 24, 2021) (dismissing claim under Section 230 that sought to hold Vimeo liable for removing plaintiff's content from its online video platform).

Ms. Frankel's (and her purported class members') alleged claims flow directly and exclusively from content created and published on TikTok's platform by third parties. Section 230 was passed precisely to shield platforms from liability for such claims. Thus, her claims all fail.

### 2. Plaintiff's right of publicity claims do not fall within Section 230's intellectual property exception.

The Complaint pointedly characterizes Ms. Frankel's right of publicity claim as seeking to vindicate a "property right" in her and other purported class members' "personas, voices, content, and likenesses." Compl. ¶ 118; *see also id.* ¶¶ 80-87 (describing how videos created by TikTok users are subject to copyright protection—though the Complaint does not assert any claim under the Copyright Act).[5] Ms. Frankel's obvious intention is to take advantage of Section 230's exception for claims arising from "intellectual property" law. 47 U.S.C. § 230(e)(2). Yet, New York law is clear that the statutory right of publicity—the only right of publicity recognized under New York law, *see infra*—enshrines a *privacy* right, not a property right, making the exception

---

[5] Nor could Ms. Frankel assert a copyright claim. Setting aside that Ms. Frankel and other TikTok users grant TikTok a broad license to use and allow third-party use of their content, *see* Stickler Decl. Ex. G, Sec. 7 (Content), *also available at* https://www.tiktok.com/legal/page/us/terms-of-service/en, the Complaint does not satisfy basic pleading requirements for a copyright claim. Indeed, Frankel does not even identify the "work" at issue or plead that it was registered prior to suit, as she must. 17 U.S.C. § 411(a); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 886 (2019).

inapplicable. The relevant statute is codified under Article 5 of the New York Civil Rights Law, titled "Right to Privacy," and New York courts uniformly describe Sections 50 and 51 as protecting a right to privacy. *See, e.g.*, *Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 453 (S.D.N.Y. 2008) (Civil Rights Law Sections 50 and 51 were not intended to protect the "property interest of the celebrity in his or her public identity"); *Stephano v. News Group Publications*, 64 N.Y.2d 174, 183 (1984) ("[T]he 'right of publicity' is encompassed under the Civil Rights Law as an aspect of the right of privacy, which . . . is exclusively statutory in this state."). Resolving any shred of doubt, the Second Circuit has held that New York's right of publicity law is subject to the one-year statute of limitations applicable to privacy claims, as opposed to the three-year statute of limitations for property claims. *Electra v. 59 Murray Enterprises, Inc.*, 987 F.3d 233, 248 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 563 (2021); *see also Souza v. Exotic Island Enterprises, Inc.*, No. 18-CV-9448 (KMK), 2021 WL 3501162, at *15 (S.D.N.Y. Aug. 9, 2021).[6] Ms. Frankel's right of publicity claims seek to vindicate privacy and personality rights, and therefore fall squarely within the scope of Section 230's immunity.

Because Ms. Frankel seeks to hold TikTok liable as a publisher of its users' content, and the Section 230 intellectual property exception does not apply, her claims must be dismissed.

---

[6] Ms. Frankel asserts claims under New York law, but even if Connecticut law applied to her common law right of publicity claim, it would still sound in privacy and therefore fall within the preemptive scope of Section 230. *See Goodrich v. Waterbury Republican-Am.*, Inc., 188 Conn. 107, 128 (Conn. 1982) (recognizing right of publicity as a privacy tort); *Bruce Kirby, Inc. v. Laserperformance (Eur.) Ltd.*, No. 3:13-CV-00297 (JAM), 2021 WL 328632 at *7 (D. Conn. Feb. 1, 2021) ("It was an invasion of privacy for defendants to use Kirby's name for some commercial advantage without his consent. Such an invasion of privacy constitutes an intangible harm that is actionable under traditional privacy torts."); *Benn v. Playskool, Inc*., No. CV91 0121058 S, 1995 WL 155439, at *4 (Conn. Super. Ct. Mar. 30, 1995) (finding that Connecticut's right of privacy tort would not be preempted by the Copyright Act because "17 U.S.C. § 301 affirms that among the rights preserved by state law are actions pertaining to invasion of privacy").

### 3.     The Court should dismiss the Complaint with prejudice.

Section 230 preempts all of Plaintiff's claims.  Thus, "[t]he problem with" Plaintiff's "causes of action is substantive" and "better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (denying leave for this reason).  Leave to amend is not warranted.

Courts regularly deny leave to amend claims barred by Section 230.  For example, in *Domen*, 433 F. Supp. 3d at 607 (S.D.N.Y. 2020), the court dismissed the complaint without leave to amend "[b]ecause there is no way for Plaintiffs to reformulate their claims in a way that is not preempted" by the CDA, such that "any attempt at re-pleading would be futile."  Likewise, in *Brikman v. Twitter, Inc.*, 2020 WL 5594637, at *5 (E.D.N.Y. Sept. 17, 2020), the court dismissed claims with prejudice because they ran "directly into the immunity afforded to Twitter by the CDA" and thus could not "be cured by better pleading." (citation omitted).  Here, too, Section 230 imposes a complete and insurmountable bar to Ms. Frankel's claims, all of which the Court should dismiss with prejudice.

### B.     Plaintiff's Claims Fail For Reasons Independent Of Section 230

Even if the Court concludes that Section 230 does not preempt Ms. Frankel's claims, they must still be dismissed for failure to state a claim.

### 1.     Ms. Frankel fails to state a right of publicity claim.

Ms. Frankel's Complaint asserts causes of action for violation of New York's statutory right of publicity, N.Y. Civil Rights Law § 51, as well as for violation of its common law right of publicity.  Compl. ¶¶ 112-125.  She is prohibited from asserting either claim.

First, New York has no common law right of publicity.  Rather, "the 'right of publicity' is encompassed under the Civil Rights Law as an aspect of the right of privacy, which . . . is exclusively statutory in this State," and thus a "plaintiff cannot claim an independent common-law right of publicity."  *Stephano*, 64 N.Y.2d at 183; *see also Pirone v. MacMillan, Inc.*, 894 F.2d 579,

586 (2d Cir. 1990) ("the Civil Rights Law preempts any common law right of publicity action").

Second, Ms. Frankel may not assert a claim under Section 51 of the Civil Rights Law, as she pleads she is a resident of Connecticut.  Compl. ¶ 6.  New York's right of publicity statute is categorically unavailable to out-of-state plaintiffs, and numerous courts in this District have dismissed Section 51 claims on this basis.  *See Champion v. Moda Operandi, Inc*., 561 F. Supp. 3d 419, 443 (S.D.N.Y. 2021) ("It is absolutely and indisputably the case that an individual who does not reside in New York cannot bring a claim under New York's Right of Publicity Law"); *Cummings v. Soul Train Holdings LLC*, 67 F. Supp. 3d 599, 602 (S.D.N.Y. 2014) (dismissing New York right of publicity claim since Plaintiff, as an Illinois domiciliary, was not permitted to assert New York right of publicity claims.); *Gary Friedrich Enters., LLC v. Marvel Enters., Inc*., 713 F. Supp. 2d 215, 229-30 (S.D.N.Y. 2010) (dismissing right to publicity claim under New York law where plaintiff was domiciled outside of New York); *Mathews v. ABC Television, Inc*., No. 88 CIV. 6031(SWK), 1989 WL 107640, at *3 (S.D.N.Y. Sept. 11, 1989) (plaintiff residing in Kenya cannot assert right of publicity claim under New York law).

In short, Ms. Frankel's right of publicity claims under New York law fail.[7]

## 2.    Ms. Frankel fails to state a claim for unfair competition.

In New York, right of publicity claims may not be recast as other torts.  In this state, "the sole remedy for a plaintiff who claims that his or her likeness or name has been used without his

---

[7] Even if she had standing to assert her claims under New York law—and she does not—Ms. Frankel's claims would still fail since it appears that the alleged infringing uses were not within the narrow confines of New York's statute which reaches only uses "for advertising purposes, or for purposes of trade."  N.Y. Civ. Rights Law §51.  Ms. Frankel's Complaint focuses on user-generated videos in which creators review and "flaunt" "dupe" versions of products Ms. Frankel had promoted—not the kind of advertising/trade use contemplated by the Civil Rights Law. Compl. ¶¶ 72-77.  The Complaint does not, however, actually identify any allegedly infringing videos, preferring to hide the ball on what, exactly, she claims infringed her rights.

or her consent is an action pursuant to §§ 50 and 51 of the Civil Rights Law." *Zoll v. Jordache Enterprises, Inc.*, 2002 WL 31873461, at *15–16 (S.D.N.Y. Dec. 24, 2002).  Accordingly, "New York courts have refused to recognize efforts to present statutory privacy claims as common law claims where the claim is based on alleged unauthorized use of a plaintiff's image or likeness and have refused to exalt form over substance when a plaintiff attempts to do so." *Id*. at *16; *see also Maxwell v. N.W. Ayer, Inc*., 159 Misc. 2d 454, 457-58 (Sup. Ct. N.Y. Cty. 1993) ("courts have consistently dismissed common law claims for misappropriation, conversion, unfair competition and unjust enrichment based on an unauthorized use of an attribute of identity"); *Hampton v. Guare*, 195 A.D.2d 366, 366-67 (1st Dep't 1993) ("the preemptive effect of the Civil Rights Law is fatal to" common law causes of action for misuse of likeness where "the plaintiff has no property interest in his image, portrait or personality outside the protections granted by the Civil Rights Law").  Here, Ms. Frankel's claim for Common Law Unfair Competition rests entirely upon TikTok's alleged "unauthorized use of Ms. Frankel's image and likeness."  Compl. ¶ 127. The claim is duplicative of Ms. Frankel's right of publicity claims, and therefore preempted by the Civil Rights Law.  It must be dismissed.

Moreover, Ms. Frankel has not pled the elements of an unfair competition claim.  To state a claim of common law unfair competition, a "plaintiff[] must show that the defendants misappropriated the plaintiff's labors, skills, expenditures, or good will and displayed some element of bad faith in doing so." *Abe's Rooms, Inc. v. Space Hunters, Inc.*, 38 A.D.3d 690, 692-93 (2d Dep't 2007).  Bad faith is central to a claim for unfair competition under New York law. *See Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc*., 58 F.3d 27, 35 (2d Cir. 1995).  Such a showing can be made by alleging "access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." *Telecom Int'l Am., Ltd. v. AT&T*

*Corp.*, 280 F.3d 175, 197 (2d Cir. 2001) (quoting *Katz Dochrermann & Epstein, Inc. v. Home Box Office*, 1999 WL 179603, at *4 (S.D.N.Y. Mar. 31, 1981)).  No such allegations have been made here.  The Complaint does not mention bad faith, fraud, deception, abuse of a confidential relationship, or anything akin to them.  Ms. Frankel's unfair competition claim independently fails for this reason as well.

## CONCLUSION

TikTok respectfully requests that the Court compel Plaintiff to arbitrate her claims against TikTok and stay this action pending the outcome of arbitration or, alternatively, to dismiss the Complaint in its entirety with prejudice.

Dated:  New York, New York
           December 22, 2022

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: *s/  Elizabeth A. McNamara*
        Elizabeth A. McNamara

Abigail B. Everdell
Leena Charlton
1251 Avenue of the Americas, 21st Floor
New York, New York 10020-1104
Tel: (212) 489-8230
lizmcnamara@dwt.com
abigaileverdell@dwt.com
leenacharlton@dwt.com

Ambika Kumar (*pro hac vice forthcoming*)
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
Tel: (206) 757-8039
Fax: (206) 757-7039
ambikakumar@dwt.com

*Attorneys for Defendant TikTok Inc.*

23